# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. JAQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 3103 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant, ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Miguel A. Jaquez ("Jaquez" or "claimant"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Jaquez's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 223. The Commissioner filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we deny the claimant's motion and grant the Commissioner's motion, affirming the decision of the ALJ.

**Procedural History**

The claimant filed an application for DIB on January 24, 2002. In his application, he alleged an onset date of January 1, 1992. The claimant was insured for disability benefits through December 31, 1992, which means that he cannot receive disability insurance

benefits if he was not disabled on or before that date. (R. 14); *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). The claimant's disability claim was initially denied on June 10, 2002 and subsequently denied after reconsideration on September 3, 2002. (R. 48, 60). The claimant then filed a timely request for a hearing. (R. 6-7). A hearing was granted and held before ALJ Richard J. Boyle on July 31, 2003. (R. 24). The claimant, Dr. Walter Miller, a medical expert, and William Schweihs, a vocational expert, appeared and testified at the hearing. (*Id.*). Donna Estrada, a Spanish language interpreter, was also present at the hearing. (*Id.*). ALJ Boyle issued a written decision on September 26, 2003, finding that the claimant did not have any impairment or impairments that significantly limited his ability to perform basic work activities prior to his date last insured, December 31, 1992. (R. 16-17). Therefore, the claimant did not have a severe impairment and was not under a "disability" as defined by the Social Security Act, at any time through December 31, 1992. (*Id.*). The Appeals Council denied the claimant's request for review and ALJ Boyle's decision became the final decision of the Commissioner. (R. 3-5); *See Estok v. Apfel*, 152 F. 3d 636, 637 (7th Cir. 1998).

**Medical Evidence**

    **A.    Dr. Gregorio Leon Herrera, Treating Physician**

The claimant alleged that he became disabled on January 1, 1992 due to arthritis and diabetes. (R. 15, 100). Dr. Gregorio Leon Herrera is the claimant's treating physician in Mexico. Dr. Herrera provided the claimant's medical records.[1] Summary translation was made and agreed to by the claimant's attorney. (R. 27). The records demonstrate a

---

[1] Dr. Herrera included both handwritten and typed reports for several dates. There are discrepancies in these reports but for the most part, the discrepancies are insignificant.

2

discrepancy as to the date of the claimant's initial visit with Dr. Herrera. In a letter dated January 17, 2002, Dr. Herrera indicates that the claimant has been under his care since December 27, 1992. (R. 163). Conversely, a medical questionnaire dated March 19, 2002, states that the claimant was initially seen on June 8, 1993. (R. 153). There are no records of any symptoms or diagnosis for the December 1992 or June 1993 dates.

According to the claimant and the Commissioner, Dr. Herrera diagnosed the claimant with peripheral vascular insufficiency on November 18, 1993. (R. 151, 153).[2] The onset of claimant's diabetes was September 20, 1994. (R. 146). The claimant was diagnosed with gout on June 4, 1996 and the onset of his joint disease was April 29, 1997. (R. 142-43; 153). On March 19, 2002, Dr. Herrera completed a medical questionnaire. (R. 153). Dr. Herrera stated the claimant suffered from peripheral vascular insufficiency, hyperlipidemia, degenerative joint disease, diabetes mellitus, gout, hypothyroidism, arteriosclerosis, and atherosclerotic cardiopathy. (*Id.*). There are no medical records from Dr. Herrera or any other doctor which demonstrate that the claimant suffered from any impairment prior to December 31, 1992. (R. 33).

On January 3, 2002, Dr. Jorge Brunelle examined the claimant and diagnosed him with diabetes, hyperthyroid, high blood pressure and high cholesterol. (R. 158-159).

---

[2] It is not clear from the medical records whether Dr. Herrera diagnosed the claimant with peripheral vascular insufficiency in 1993. Indeed, a handwritten report indicates that on November 18, 1993, Dr. Herrera noted paresthesia in the hands and feet for the past two months. (R. 151). That record does not specifically state that Dr. Herrera diagnosed the claimant with peripheral vascular insufficiency in November 1993. However, the typed version of that report, while not completely clear, appears to show a diagnosis of peripheral vascular insufficiency in 1993. (R. 153). Assuming a diagnosis of this condition in November 1993, it constitutes the earliest diagnosis of any condition.

### B. Dr. Walter Miller, Medical Expert

Dr. Walter Miller, the medical expert, testified that the medical records do not establish that the claimant suffered from any severe impairment on or before December 31, 1992. (R. 33). Dr. Miller stated that the claimant was first diagnosed with diabetes in September 1994. (R. 36). He also testified that there were peripheral vascular problems in November 1993. (*Id.*). The ALJ asked Dr. Miller whether any of those problems relating back to 1992 would have caused limitations. (*Id.*). Dr. Miller said, "[i]t's hard to say." (*Id.*). He testified that peripheral vascular disease is not documented in the claimant's history but that it may be present because of the diabetes. (*Id.*). Dr. Miller further stated that the claimant does not have claudication, that his walking problem is indicative of arthritis and that there is probably some kind of artioscleratic heart disease. (R. 36-37). However, he testified that there are no symptoms suggestive of heart failure. (R. 37).

Dr. Miller stated that the combination of the claimant's medical problems probably would hamper his ability to do work today. (R.37). However, he also testified that it would be a "big stretch" to say that the claimant's ability to do work would have been hampered ten years ago, at the end of 1992. (*Id.*). Dr. Miller said that it was "[h]ard to say on a short record." (*Id.*).

Claimant's counsel then asked Dr. Miller whether, in a general sense, symptoms of peripheral vascular disease could have started in 1990, 1991 or 1992, assuming a valid diagnosis of the disease in November of 1993. (R.38). Dr. Miller stated, "[y]ou know, I can't say .... its possible." (*Id.*). However, he further testified that there is "nothing to base it [on]." (*Id.*).

**The Claimant's Testimony**

The claimant testified that he began having medical problems, specifically gout and problems with his legs, in 1993. (R. 40). He further testified that he had difficulty walking in 1992 and could walk only a block. (*Id.*). The claimant said that his ability to walk is the same as it was ten years ago. (R. 41). However, he stated that the problems with his legs have become a little more advanced in the past ten years. (*Id.*). The claimant said that ten years ago, he felt pain but not as much as he does now. (*Id.*).

The claimant testified that he has not worked since 1992. (R. 30). He stated that he had previously worked as a spot welder at All Steel for fourteen years. (R. 31). He stood all day and had to lift ten to fifteen pounds to do that work. (*Id.*). The claimant testified that ten years ago, he could lift twenty pounds and that twenty or twenty-five pounds was the heaviest weight he was required to lift at All Steel. (R. 41-42). He further stated that he stopped working at All Steel because he decided to move to Mexico with his family. (R. 31).

**The Vocational Expert's Testimony**

The vocational expert, William Schweihs, testified that the level of exertion for lifting twenty to twenty-five pounds is in the medium range which is consistent with the DOT's classification for a tack welder's or a spot welder's level of exertion.[3] (R. 43). Mr. Schweihs testified that a tack or spot welder's skill level would be skilled. (*Id.*). He further stated that welding normally would not be a transferable skill below a medium level. (R. 43-44). However, according to Schweihs, the claimant's past work description indicates a light level

---

[3] The Dictionary of Occupational Titles (DOT) is a occupational coding structure designed to group occupations and it is used by the Social Security Administration to evaluate disabilities.

5

and there would be a limited number of industries that would employ a spot welder at the light level. (R. 44).

**Standard of Review**

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chafer*, 55 F. 3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [his] assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**Legal Analysis**

Whether a claimant qualifies to receive DIB depends on whether the claimant is

6

"disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuos period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176.

The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). The claimant bears the burden "at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Zurawski*, 245 F.3d at 886. However, if the process ends at step two, the burden of proof never shifts to the Commissioner. *Bowen*, 482 U.S. at 146 n. 5. Similarly, if the impairment is one that is conclusively presumed to be disabling, the claimant is not required to show that he is unable to perform his prior work. *Id.*

ALJ Boyle properly followed the five-step inquiry. The ALJ's findings at step one are

7

uncontested. At step one, the ALJ found that Jaquez had not engaged in substantial gainful activity since the alleged onset of the disability.[4] (R. 15). At step two, the ALJ found that the claimant did not have any impairment or combination of impairments that significantly limited his ability to do basic work-related activities prior to December 31, 1992 and therefore, the claimant did not have a severe impairment. (R.16). Because a finding adverse to the claimant at this step bars his claim for benefits, the ALJ did not need to proceed to the next step in the analysis. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

**A.     The ALJ's Findings Are Supported By Substantial Evidence**

The ALJ's findings will be affirmed only if they are supported by substantial evidence; substantial evidence is defined as sufficient relevant evidence that a reasonable person would accept as adequate to support the decision. *Diaz*, 55 F. 3d at 305. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. *Bowen*, 482 U.S. at 146 n. 5. If the claimant does "not have any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," we will find that the claimant does not have a severe impairment. *See* 20 C.F.R. § 404.1520(c). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; *see also*, SSR 96-3p, 1996

---

[4] The ALJ mistakenly reported that the claimant worked for Solar Spring Company in 1999. (R. 15). However, the parties stipulated that someone else was using the claimant's Social Security Number, and in 1999 the claimant was living in Mexico. (R. 30-31). This factual error is irrelevant because the ALJ found that the work in 1999 did not constitute substantial gainful activity.

WL 374181, *2 (recognizing that symptoms will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence, *i.e.*, signs and laboratory findings, that he has a medically determinable physical or mental impairment that could reasonably be expected to produce the alleged symptoms).[5]

The ALJ concluded that the medical evidence did not establish that the claimant had any medically determinable impairment on or before December 31, 1992. (R. 16). We agree. There are no signs or laboratory findings that demonstrate that the claimant suffered from any medically determinable impairment or combination of impairments prior to the expiration of his insured status. As the ALJ noted, there are no records of any medical treatment prior to the expiration of the claimant's eligibility for benefits. (R. 15). Indeed, the ALJ found that the earliest diagnosis of any medical condition was that of peripheral vascular insufficiency, on November 18, 1993. (R. 16, 153). ALJ Boyle further stated that even if Dr. Herrera first saw the claimant on December 27, 1992 instead of June 8, 1993, there is still no evidence that the claimant had any functional limitations in December 1992. (R. 16). The ALJ also relied on the testimony of Dr. Miller, the medical expert. Dr. Miller testified that the medical evidence does not show that the claimant had any severe impairments prior to December 31, 1992. (R. 33). Thus, the only evidence of any signs, symptoms, or laboratory findings is the claimant's testimony that he had trouble

---

[5] "Symptoms are [the claimant's] own description of [his] physical or mental impairment." 20 C.F.R. § 404.1528(a). Signs are anatomical, physiological, or psychological abnormalities that must be shown by clinical diagnostic techniques. 20 C.F.R. § 404.1528(b). "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c).

walking in 1992. (R. 40).

However, the claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a). Indeed, no symptom or combination of symptoms can be the basis for a finding of disability unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment. SSR 96-4p, 1996 WL 374187. Absent a showing that there is a medically determinable impairment, an individual must be found not disabled at step two of the sequential evaluation process. *Id.*

Because the claimant failed to demonstrate the existence of a medically determinable impairment prior to his date last insured, the ALJ found (as he was required to) that the claimant did not have a severe impairment and therefore, was not under a "disability" as defined by the Social Security Act. (R. 16-17); SSR 96-4p, 1996 WL 374187. The ALJ's opinion allows us to trace the path of his reasoning and demonstrates that he considered the important evidence. *Carlson*, 999 F.2d at 181. Therefore, we find that the ALJ's decision is supported by substantial evidence.

**B.    The ALJ's Alleged Failure to Consider the Claimant's Testimony**

The claimant argues that the ALJ erred because he failed to consider the claimant's testimony in his findings. However, the ALJ need not "provide a complete written evaluation of every piece of testimony and evidence." *Diaz*, 55 F. 3d at 308; *see also*, *Dixon*, 270 F.3d at 1176. The ALJ's opinion demonstrates that he reviewed and carefully considered the entire record. (R. 15-16). Moreover, even if the ALJ had specifically discussed the claimant's testimony in his opinion, that testimony supports the ALJ's decision. Indeed, the claimant testified that he started having medical problems in 1993.

(R. 40). He further stated that he stopped working at All Steel because he decided to go to Mexico with his family. (R. 31). The claimant did not testify that he stopped working because of any medical impairment or functional limitations.

The only evidence of any signs, symptoms, or laboratory findings to establish a medically determinable impairment is the claimant's testimony that he had trouble walking in 1992. (R. 40). However, as discussed above, the claimant's testimony alone is not enough to establish the existence of a medically determinable physical or mental impairment. 20 C.F.R. § 404.1528(a); 42 U.S.C. § 423(d)(5)(A). Once the ALJ concluded that the claimant had failed to prove he had a medically determinable impairment, the ALJ was not required to consider the claimant's testimony concerning his subjective symptoms because that testimony by itself could not support a finding of disability. *See Cook v. Massanari*, 2001 U.S. Dist. LEXIS 9195, *21 (N.D. Ill. 2001)(recognizing that only after the initial finding of an objectively verifiable abnormality is made, does the ALJ begin looking at the claimant's symptoms); *see also,* SSR 96-7p; SSR 96-4p; SSR 96-3p.

Furthermore, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Because there are no medical signs or laboratory findings demonstrating the existence of a medically determinable physical or mental impairment prior to December 31, 1992, there is no reason to believe that a remand might lead to a different result. Based on the foregoing, we will not remand for further consideration of the claimant's testimony.

**C.     The ALJ's Alleged Failure to Consider the Medical Expert's Testimony**

The claimant also contends that the ALJ dismissed the testimony of the medical

expert stating that "it's possible" that symptoms of peripheral vascular disease could have started as early as 1991 or 1992. Counsel for the claimant asked Dr. Miller whether, in general, symptoms of peripheral vascular disease could have started in 1990, 1991 or 1992, assuming a valid diagnosis of the disease in November of 1993. (R. 38). In response, Dr. Miller stated, "[y]ou know, I can't say .... its possible." (*Id.*). However, he further testified that there is "nothing to base it [on]." (*Id.*).

**While the ALJ's opinion does not reference this part of Dr. Miller's testimony, again, the ALJ is not required to discuss every piece of evidence he considered in the record.** *See Dixon*, **270 F. 3d at 1176. Instead**, the ALJ only needs to "build an accurate and logical bridge from the evidence to [his] conclusion." *Id.* As discussed above, we find that the ALJ did build such a bridge. The ALJ relied on Dr. Miller's testimony that the medical evidence failed to show the existence of any severe impairment prior to December 31, 1992. (R. 16). The ALJ also noted that there were no records of medical treatment prior to that date. (R. 15). Finally, the ALJ found that the medical evidence did not establish that the claimant had any medically determinable impairment on or before December 31, 1992. (R. 16).

Furthermore, Dr. Miller's comment that it is possible that symptoms of peripheral vascular disease could have started in 1991 or 1992 is pure speculation. Dr. Miller admitted as much when he stated that there was nothing to base such a possibility on here. (R. 38). The mere possibility that symptoms might have existed prior to the claimant's date last insured is simply not enough to sustain the claimant's burden at step two. Dr. Miller's speculative testimony does not change the fact that the claimant failed to present any medical signs or laboratory findings that demonstrate that he had a medically determinable impairment prior to December 31, 1992. Therefore, even if symptoms might have existed

12

prior to the claimant's date last insured, we still find that the ALJ's decision that the claimant was not disabled is supported by substantial evidence. SSR 96-4p, 1996 WL 374187 (recognizing that absent a showing that there is a medically determinable impairment, an individual must be found not disabled at step two*).*

The claimant further argues that the ALJ misapprehended Dr. Miller's testimony because the ALJ stated that Dr. Miller testified that, "it would be a big stretch to say the claimant had peripheral vascular disease before December 31, 1992." (R. 16). The claimant correctly points out that Dr. Miller did not testify in the manner suggested by the ALJ. Instead, Dr. Miller testified that the claimant's ability to do work probably would be hampered today by a combination of his medical impairments. (R. 37). However, he also testified that it would be a "big stretch" to say that the claimant's ability to do work would have been hampered ten years ago, at the end of 1992. (*Id.*). Dr. Miller said that it was "[h]ard to say on a short record." (*Id.*). The fact that the ALJ misconstrued Dr. Miller's testimony is inconsequential because the testimony would not have helped the claimant. To the contrary, it provides further support for the ALJ's decision. Accordingly, a remand for further consideration of Dr. Miller's testimony is not warranted.

### D. The Claimant's Combination of Impairments

Next, the claimant argues that the ALJ had a duty to consider the possibility that he suffered from a combination of disabling conditions. In particular, the claimant contends that the ALJ should have made an inquiry as to the totality of conditions that may have been present prior to December 31, 1992. However, the claimant bears the burden of establishing a medically determinable impairment at step two. *Bowen*, 482 U.S. at 130,

13

146. The claimant offered no objective medical evidence to demonstrate that he suffered from any medically determinable impairment prior to December 31, 1992. Furthermore, his testimony about any symptoms he may have had at that time is insufficient to establish that he was disabled.  42 U.S.C. § 423(d)(5)(A)(an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability .... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment).  Here, the ALJ specifically found that the medical evidence did not establish that the claimant had any medically determinable impairment prior to the expiration of his insured status.  (R. 16).  Therefore, contrary to the claimant's suggestion, there was no need for the ALJ to consider the combined effect of all of his impairments because the claimant failed to establish the existence of even one medically determinable impairment.

**Conclusion**

For the reasons set forth above, we conclude that the ALJ's findings are supported

by substantial evidence and free from legal error. Accordingly, the claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The decision of the ALJ is affirmed. It is so ordered.

ENTER:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: September 1, 2005**